UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
JUDITH COLBY,
    Plaintiff,

vs.

WOLPOFF & ABRAMSON, LLC
CENTURION CAPITAL CORP.
and JOHN DOE 1-10, XYZ, INC 1-10,
ten names being fictitious and
unknown to the plaintiffs, the person
or parties intended being the persons
or parties, if any,
    Defendants.
------------------------------------------x

COMPLAINT FOR VIOLATION
of the Fair Debt Collection
Practices Act

Plaintiff Demands a
Trial by Jury

**08 CIV. 0358**

**BRIEANT**

## INTRODUCTION

1. This is an action for damages and declaratory relief by an individual consumer for Defendants' joint and several and repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, (hereinafter FDCPA) the New York General Business Law § 349, (hereinafter NYGBL) negligence, defamation, and infliction of emotional distress.

## JURISDICTION AND VENUE

2. Jurisdiction of the Court arises under 28 U.S.C. 1331 in that this dispute involves predominant issues of federal law. Defendants have violated the provisions of the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. 2201 and 2202. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. 1367. Venue in this District is proper in that Plaintiff resides here, Defendants transact business here and the conduct complained of occurred here.

## PARTIES

3. Plaintiff, JUDITH COLBY, is natural person residing at 15 Vandervoort Street, Florida, New York, 10921, and a consumer pursuant the FDCPA.

4. Defendant, WOLPOFF & ABRAMSON, LLC (hereinafter Wolpoff & Abramson) is a debt collection law firm doing business at 300 Canal View Blvd. 3rd Floor, Rochester, New York, 14623, and is a debt collector as defined by the FDCPA.

5. Defendant, CENTURION CAPITAL CORPORATION, (hereinafter Centurion) is a debt collector as defined by the FDCPA, with its corporate headquarters located at 700 King Farm Blvd., Suite 503, Rockville, Maryland 20850.

6. John Does are various employees of Defendants and/or various companies who created, sold or transferred the nonexistent debt, whose identity is unknown to Plaintiff at this time but when their identity is discovered, the complaint may be amended to include them as party Defendants.

## FACTUAL ALLEGATIONS

7. In 1997, while Plaintiff still resided at her old address, at 29 North Main Street in Florida, New York, she began getting bills from a credit card company, (which Plaintiff recalls as being from sent from discover but is not certain thereof as it was 10 years ago), in the mail for a credit card Plaintiff never used. After receiving these bills, Plaintiff contacted that credit card company and told them there was a mistake on their part, as she never purchased any items with a credit card at all.

8. The company told her that it was for items she purchased from a catalog. Plaintiff told them that she never purchased anything from a catalog, and never had a credit card.

9. Plaintiff purposely does not have any credit cards, in order to avoid overspending and incurring any debt. Plaintiff's credit report shows no credit card accounts, and no delinquent balances whatsoever.

10. In October 2006, while applying for a mortgage loan, Provident bank ran a credit check on Plaintiff, and informed her that she had a clean credit line, showing no outstanding debt.

11. After purchasing her current residence in January of 2006, Plaintiff started receiving phone messages telling her to call the Law Offices of Wolpoff & Abramson. When she called them back to ask what the calls were about, they stated that they would not give her any information unless she gave them her social security number.

12. Plaintiff would not give them her social security numbers out of concern for the protection of her identity.

13. Plaintiff attempted to communicate and find out what Defendant Wolpoff & Abramson wanted on several more occasions, but was always asked for her social security number and it always came to the same end.

14. Defendant Wolpoff & Abramson called Plaintiff an average of 5 times per day, including early mornings on weekends, and left messages on her voicemail for her to call back Wolpoff & Abramson. Whenever she would return their calls, they would pester her for her social security number, which she was reluctant to disclose.

15. In August of 2006, Plaintiff found legal documents pinned on her door. Plaintiff contacted the Wolpoff & Abramson once again, as they were listed on the legal papers, this time reluctantly giving up her Social Security number, in hopes that they would realize their mistake. She was informed that according to their records she used a Discover

3

card to Purchase thousands of dollars worth of merchandise from the Newport News catalog.

16.     Plaintiff never purchased anything from Newport News, she was not even aware of the existence of such a catalog.

17.     In May of 2007 Plaintiff was informed by the accounting department at her place of employment that the Orange County Sheriff's Department had served papers demanding the garnishment of her income.

18.     Plaintiff was not aware of the default Judgment, which was obtained against her by Wolpoff & Abramson in the Supreme Court of Orange County. Plaintiff later obtained copies of the Court records from the Clerk.

19.     Plaintiff called Wolpoff & Abramson once more, trying to convince them that she never incurred this debt, never purchased anything from Newport News. Plaintiff was told that if she could prove that she did not make any such purchase, they would be glad to help her.

20.     Wolpoff & Abramson continued to call that she needs to pay them and Plaintiff informed them that she was already paying the bill weekly, against her will, through the wage garnishment. They stated that they were willing to allow Plaintiff to pay off the balance, without paying the accumulated interest.

21.     About $90.00 a week was garnished off Plaintiff's weekly check. Yet, when Plaintiff thought that the remaining Judgment balance was around $1,700.00, she learned from the woman in the accounting department at her place of employment that it was still around $2,500.00 because the weekly $90.00, which they collected for several months

already, was only paying the interest they were charging. Upon information and belief, that was interest on top of the amount of the Default Judgment.

22. In September of 2007, Plaintiff decided to just pay Wolpoff & Abramson off, despite the fact that she never owed the alleged debt, so that they would leave her alone and she would stop paying their huge interest charges, and finally get rid of the stress they were inflicting upon her.

23. Plaintiff did not possess the necessary funds, so she decided to take a loan from her 401k in the amount of $10,000 to pay for her mortgage payments, which she was nearly short on as a result of the wage garnishment, and to pay Wolpoff & Abramson the Judgment amount.

24. Plaintiff intended to send a portion of this loan directly to Wolpoff & Abramson, and was told by the department of her employer, who handled the loan, that she should contact the law firm, Wolpoff & Abramson, and ask them to fax to them the information required to transfer the money to pay them.

25. Plaintiff called Wolpoff & Abramson and spoke to a woman who was an extremely rude, who actually hung up on Plaintiff.

26. When Plaintiff called back, a seemingly pleasant man answered the call and said he would assist her. However, he refused to send any of Plaintiff's information to "some loan company he had never heard of". When Plaintiff asked him if he was aware that she was trying to pay a bill, he immediately became irritable and impossible to communicate with, declining to help Plaintiff.

27. Plaintiff realized that Wolpoff & Abramson had no intention of making it possible for her to pay the alleged amount of the Judgment, but that they rather intended to attempt

garnishing her wages, to receive the huge amount of interest from Plaintiff which they kept charging.

28. Plaintiff has suffered monetary damages including the money garnished by Defendant, including but not limited to a fee for the money she was forced to borrow from her 401k as a result of the garnishment and tax consequences for borrowing from her 401k. Plaintiff also suffered financial hardship as a result of Defendant's actions.

29. The Judgment against Plaintiff affected her public record, and her reputation at her place of employment, which is causing Plaintiff defamation and embarrassment.

30. This Judgment has harmed Plaintiff's credit and is preventing Plaintiff from enjoying the benefits of a good credit rating, which she had always so meticulously maintained. Plaintiff has suffered damages as a result of the acts of the Defendants.

31. The constant frustration with the calls and attempting to resolve this issue, the rudeness towards Plaintiff by Wolpoff & Abramson and the Default Judgment against Plaintiff have caused sleepless nights, anxiety, stress nausea and severe distress to Plaintiff.

FIRST CLAIM: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

32. The allegations of paragraphs 1-31 in this pleading are incorporated as if fully rewritten herein.

33. Defendant and Wolpoff & Abramson violated 15 U.S.C. 1692d(5) by repeatedly calling Plaintiff, at inconvenient times, pestering her to provide them with her social security number.

34. Defendants Centurion and Wolpoff & Abramson violated 15 U.S.C. 1692e by making false representations to Plaintiff that she owed a debt, in their attempt to collect the alleged debt, and to the Court in obtaining the Default Judgment.

35. Defendants Centurion and Wolpoff & Abramson violated 15 U.S.C. 1692e(2) by misrepresenting the character, status and amount that Plaintiff was alleged to owe, as Plaintiff did not owe any debt.

36. Defendants Centurion and Wolpoff & Abramson violated the Fair Debt Collection Practices Act 15 U.S.C. 1692e(8) by communicating false credit information and attempting to collect a debt when said debt was disputed, and failing to inform the Supreme Court of Orange County that the debt was disputed.

37. Defendants, Centurion and Wolpoff & Abramson violated the Fair Debt Collection Practices Act 15 U.S.C. 1692e(10) by making false representations and deceptive means in trying to obtain Plaintiff's social security number, and collect the alleged debt.

38. Defendants, Centurion and Wolpoff & Abramson violated the Fair Debt Collection Practices Act 15 U.S.C. 1692f(1) by attempting to collect and collecting an amount for which there was not agreement creating the debt, and that they were not permitted by law to collect.

39. Defendants, Centurion and Wolpoff & Abramson violated the Fair Debt Collection Practices Act 15 U.S.C. 1692f(5) by causing the garnishment of Plaintiff's wages and the consequential expenses caused therefrom.

40.     Defendants, Centurion and Wolpoff & Abramson violated the Fair Debt Collection Practices Act 15 U.S.C. 1692g(b) by continuing to attempt collection on the debt despite Plaintiff's dispute of such debt and their failure to validate the alleged debt.

41.     As a direct and proximate result thereof, Plaintiff has been injured and may continue to suffer such injury in the future.

42.     As a direct and proximate result of the above violations of the FDCPA, Defendants are liable to Plaintiff for declaratory judgment that Defendant's conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

## SECOND CLAIM: DECEPTIVE TRADE PRACTICES, VIOLATION OF THE NY GBL § 349

43.     The allegations in paragraphs 1-42 in this pleading are incorporated as if fully rewritten herein.

44.     As alleged herein, Defendants have engaged in unfair and deceptive trade and business practices and are liable unto Plaintiff under state laws for those violations.

45.     Alternatively, Defendants have, with willful intent to injure or maliciously, engaged in unfair and deceptive trade and business practices and are liable unto Plaintiff under various state laws for those violations.

## THIRD CLAIM: NEGLIGENT ACTIONS

46.     Plaintiff re-alleges and incorporates paragraphs 1 through 45 above as if fully set out herein.

47.     Defendants, Centurion and Wolpoff & Abramson had a duty to the plaintiff to stop collection efforts after they received the validation request.

48. Defendants, Centurion and Wolpoff & Abramson had the duty to substantiate the account, to verify whether the alleged debt was incurred by Plaintiff.

49. Defendants, respectively, failed in their duties, by negligently ignoring such validation demands and continuing with their violative actions against Plaintiff with utter disregard to their legal obligations to Plaintiff.

50. As a direct and proximate result of the negligence of Defendants, Plaintiff has been injured and may continue to suffer such injury in the future and Defendants are liable to Plaintiff for declaratory judgment that Defendant's conduct was negligent, and Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

## FOURTH CLAIM: DEFAMATION

51. The Plaintiff re-alleges and incorporates paragraphs 1 through 50 above as if fully set out herein.

52. Defendants recklessly, maliciously and/or intentionally obtained a Supreme Court Default Judgment against Plaintiff when they knew or should have known that they had no right to do so, because they have failed to validate the debt.

53. Defendants recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning plaintiffs with reckless disregard for the truth of the matters asserted.

54. Defendant's publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of plaintiff and caused severe humiliation, emotional distress and mental anguish to plaintiff.

55. Defendant's obtaining a Judgment against Plaintiff when they had no right to do so has severely tarnished Plaintiff's Public Record and Credit, thereby damaging

Plaintiff's personal and consumer reputation, causing severe emotional distress and anguish to Plaintiff.

56.     Defendant's garnishing of Plaintiff's wages caused defamation and embarrassment for Plaintiff at her place of employment.

57.     Defendants was notified of the inaccuracy of their records, that she never owed the debt, however, the Defendants continued to issue and/or publish report(s) to third parties, which contained inaccurate information about plaintiffs.

58.     Defendants acted with willful intent and malice to harm plaintiff.

## TRIAL BY JURY

59.     Plaintiff hereby demands a Trial by Jury on all claims herein.

**WHEREFORE,** Plaintiff respectfully prays that judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants' conduct violated the FDCPA, and NYGBL, and declaratory and injunctive relief for Defendants' violations of the Consumer Act;

B. Injunctive relief to prevent Defendants from collecting on the County Court Judgment against Plaintiff, including injunctive relief to prevent Defendants from garnishing Plaintiff's income;

C. That the Judgment obtained by Defendant against Plaintiff in the Supreme Court of Orange County be vacated immediately and deleted from Plaintiff's credit report.

D. Actual damages as proven at trial, on each and every claim;

E. Punitive damages, where applicable;

F. Statutory damages, where applicable;

G. Costs and reasonable attorney fees; and

H. For such other and further relief as may be just and proper.

DATED: December 19, 2007  
Spring Valley, NY

/s/ *[signature]*

Shmuel Klein (SK 7212) Fed Court Only  
Law Office of Shmuel Klein, PC  
Attorneys for Plaintiff  
268 ROUTE 59  
Spring Valley, NY 10977  
(845) 425-2510